UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MESA VALLEY HOUSING ASSOCIATES II LIMITED PARTNERSHIP,

        Plaintiff,

-against-

RED LOBSTER INTERMEDIATE HOLDINGS LLC,

        Defendant.

**VERIFIED COMPLAINT**

Index No.: 5:24-CV-0790 (DNH/MJK)

---

Plaintiff MESA VALLEY HOUSING ASSOCIATES II LIMITED PARTNERSHIP, through its attorneys, Lemery Greisler LLC, as and for its Verified Complaint, states as follows:

## PARTIES

1. Plaintiff MESA VALLEY HOUSING ASSOCIATES II LIMITED PARTNERSHIP ("Plaintiff" or "Lessor") is an Arizona limited partnership authorized to conduct business in the State of New York with its principal place of business located at 15957 N. 81st Street #101, Scottsdale, Arizona 85260.

2. Defendant RED LOBSTER INTERMEDIATE HOLDINGS LLC ("Defendant" or "Guarantor") is, upon information and belief, a Delaware limited liability company with its principal place of business located in Orlando, Florida.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

{LG 00765314 2 }    1

4. This Court has personal jurisdiction over Defendant as it engaged in business within the State of New York, and this lawsuit arises from its business in the State of New York. In the Guaranty Agreement at issue herein, Defendant also agreed to submit to the jurisdiction of any state or federal court sitting in the State of New York.

5. Venue is proper in the Northern District of New York under 28 U.S.C. § 1391(b) because this is a district in which the real property for the underlying lease is located and is where a substantial part of the events or omissions giving rise to the claims occurred.

## BACKGROUND

6. Plaintiff is the owner, landlord and lessor of real property located at 2965 Erie Boulevard East, Syracuse, New York 13224 (hereinafter the "Property").

7. On or about May 6, 2019, Spirit Master Funding IX, LLC ("Spirit Master"), as Landlord, and RED LOBSTER HOSPITALITY LLC ("Red Lobster" or "Lessee"), as Lessee, entered into a certain Lease Agreement (the "Lease") wherein Red Lobster leased the Property with a lease term commencing on May 9, 2019 (the "Effective Date") and expiring on December 31, 2034 (the "Lease Term"). A copy of the Lease is annexed as Exhibit "1" hereto.

8. Pursuant to Section 5[A] of the Lease, Red Lobster agreed to pay a base annual rent of $206,700.00 (the "Base Annual Rental") in twelve (12) monthly installments, each due and payable on or before the first (1st) day of each month during the Lease Term (the "Base Monthly Rent") (*see id.*).

9. Per Section 5[B] of the Lease, Red Lobster agreed that commencing on the first Adjustment Date (as defined herein) and on each Adjustment Date thereafter, the Base Annual Rental shall increase by an amount equal to the product of the then-current Base Annual Rental

multiplied by 2%, with the increased Base Annual Rental then constituting the new Base Annual Rental due and payable until the next Adjustment Date (*see id.* at Section 5[B]).

10. According to Section 1 of the Lease, the Adjustment Date "means the first January 1st following the Effective Date and each January 1st thereafter during the Lease Term (including any applicable extension periods pursuant to Section 28)" (*Id.*).

11. In addition to the Base Annual Rental, the Lease also defined "Additional Rental" as all sums of money required to be paid by Lessee under the Lease that are not specifically referred to as rent, and that Lessor shall have the same remedies for nonpayment of Additional Rental as those provided for the nonpayment of Base Annual Rental (*see id.*).

12. Per Section 9 of the Lease, the Lessee shall be obligated to pay, as they accrue, all taxes and assessments of every type or nature assessed against, imposed upon or arising with respect to the Lessor or the Property (*see id.*).

13. Section 13 of the Lease states that "[a]ny delinquent payment (that is, any payment not made within five calendar days after the date when due) shall, in addition to any other remedy of Lessor, incur a late charge of 5% …and bear interest at the Default Rate [as defined herein], such interest to be computed from and including the date such payment was due through and including the date of the payment" (*Id.* at Section 13).

14. The Lease defines "Default Rate" as being "the lesser of the highest rate for which the undersigned may legally contract or the rate of 14% per annum" (*Id.* at Section 1).

15. Pursuant to the Lease, an "Event of Default" is defined and includes, but is not limited to, "[i]f any Base Monthly [Rent] due under this Lease is not paid when due and such failure continues for five (5) days or more after written notice from Lessor," as well as if Lessee

fails to pay, prior to delinquency, any taxes or assessments against the Property (*see id.* at Section 24[A](ii) and (iv)).

16. Further, Section 24[B] of the Lease provides that upon the occurrence of an Event of Default, the Lessor shall be entitled to exercise, at its option, concurrently, successively, or in any combination, all remedies available at law or in equity, including, but not limited to:

   (i) Termination of the Lease and Lessee's right to possession of the Property;

   (ii) Reentry and repossession of the Property, including any/all licenses, area development agreements, permits and other rights or privileges pertaining to the Lessee's use and operation of the Property;

   (iii) Commencement of an action against Lessee for any damages sustained by Lessor or any equitable relief available;

   (iv) Relet the Property or any part thereof for such term(s) at the sole discretion of the Lessor;

   (v) Accelerate and recover any/all rent and other monetary sums at the present value (discounted at a rate of United States Treasuries) scheduled to become due and owing under this Lease after the date of such breach for the entire original scheduled Lease Term;

   (vi) Recovery from Lessee of all reasonable costs and expenses, including reasonable attorneys' fees, court costs and any other similar costs and fees paid or incurred by Lessor as a result of such breach;

   (vii) Correction of such breach and subsequently charging the Lessee all costs and expense incurred by Lessor therein;

   (viii) Pursuance of any equitable relief available to Lessor, including, without limitation, the right of specific performance.

(*see id.* at Section 24[B] [i] – [viii]).

17. For the benefit of the landlord and its successors and assigns, Guarantor, for good and valuable consideration, executed a Guaranty Agreement May 9, 2019 (the "Guaranty"), wherein Guarantor unconditionally and irrevocably guaranteed "(i) the payment and performance by Lessee of all its obligations, covenants, agreements, terms and conditions under the Lease and

(ii) the payment of all sums which may become payable by Lessee pursuant to the Lease in full when due in accordance with the provisions thereof." A copy of the Guaranty is annexed as Exhibit "2" hereto.

18.  As noted in the Lease, Red Lobster was already in possession of the Property on the Effective Date.

19.  After entering into the Lease, Spirit Master sold the Property to Plaintiff.

20.  Pursuant to an Assignment and Assumption of Lease and Rents and an Assignment of Memorandum of Lease, both dated May 9, 2019, Spirit Master assigned all its right, title, and interest as under the Lease to Plaintiff (*see* Assignment and Assumption of Lease and Rents, and Assignment of Memorandum of Lease, collectively annexed as Exhibit "3" hereto).[1]

21.  As set forth below, Red Lobster defaulted under the Lease by failing to pay the Base Monthly Rent that was due on November 1, 2023, and each month thereafter.

22.  On February 29, 2024, pursuant to Section 24[A](ii) and [B]) of the Lease, Plaintiff overnighted a written Notice of Default to Red Lobster specifying that Red Lobster failed to pay the Base Monthly Rent due on November 1, 2023, December 1, 2023, January 1, 2024, and February 1, 2024 (*see* Notice of Default, annexed as Exhibit "4" hereto).

23.  Pursuant to the Lease, the Notice of Default gave Red Lobster five (5) days to cure the default and noted that if Red Lobster fails to timely and properly cure the default, Plaintiff will take affirmative action under the Lease and at law to enforce its rights including, but not limited to, seeking the recovery of possession of the Property and the recovery of all damages available under the Lease, including any attorneys' fees and costs incurred (*see id.*).

---

[1] The Assignment of Memorandum of Lease was recorded in the Onondaga County Clerk's Office on June 19, 2019, as Instrument Number 2019-00021577 (*see id.*).

24. Despite due demand, Red Lobster failed to timely and properly cure the defaults.

25. On April 26, 2024, pursuant to RPAPL § 711, Plaintiff duly demanded in writing that Red Lobster pay all past due Base Monthly Rent by issuing a 14-Day Notice to Pay Rent or Quit (the "14-Day Notice") (*see* 14-Day Notice, annexed as Exhibit "5" hereto).[2]

26. After issuing and serving the 14-Day Notice, the Base Monthly Rent payment for May 2024 also came due and was not paid.

27. Additionally, since issuing and serving the 14-Day Notice, Red Lobster also defaulted under the Lease by failing to timely pay the real estate taxes that were due and owing on the Property for April 30, 2024.

28. In particular, Red Lobster failed to pay the quarterly installment of Onondaga County real estate taxes in the amount of $3,654.57, and the quarterly installment of Syracuse City/School real estate taxes in the amount of $7,793.63, both of which were due on April 30, 2024 (*see* 2024 County Quarter Detail and 2024 City/School Detail, collectively annexed as Exhibit "6" hereto).

29. On about May 17, 2024, Red Lobster overnighted the keys to the Property Plaintiff, enclosing a letter dated that same day (the "5/17/24 Letter") noting that it was surrendering possession of the Property (*see* 5/17/24 Letter, annexed as Exhibit "7" hereto).

30. In the 5/17/24 Letter, Red Lobster also advised that it was "in the process of turning off all utility services (including fire alarms) serving the Property, and Red Lobster's accounts with all utility providers are being closed" (*Id.*).

31. Promptly thereafter, on May 19, 2024, Red Lobster, along with fourteen (14) other affiliated entities (collectively the "Debtors"), filed fifteen (15) Voluntary Petitions with

---

[2] The 14-Day Notice was personally served on the Red Lobster on May 2, 2024, and served on Red Lobster by nail and mail on May 3, 2024, each of which were pursuant to the requirements of RPAPL § 735. As such, Red Lobster had until May 17, 2024 to pay the outstanding rent or quit the Property.

the United States Bankruptcy Court Middle District of Florida Orlando Division (the "Bankruptcy Court") seeking Chapter 11 bankruptcy protection (*see* Red Lobster's Ch. 11 Voluntary Petition, annexed as Exhibit "8" hereto).

32. Additionally, on May 20, 2024, Debtors filed an *ex parte* motion and obtained an Order Granting Debtors' *Ex Parte* Motion for Joint Administration from the Bankruptcy Court (the "Joint Administration Order"), which consolidated the 15 bankruptcy cases and ordered their joint administration for procedural purposes only, with the case of Red Lobster Management LLC, Case No. 6:24-bk-02486-GER designated as the "Lead Case" (*see* Joint Administration Order, annexed as Exhibit "9" hereto).

33. On May 20, 2024, in the Lead Case, Debtors made their first omnibus emergency motion requesting entry of an order authorizing the Debtors to (a) reject the unexpired leases listed on Exhibit "A" to the motion (the "Rejected Leases") effective as of the Rejection Date,[3] (b) abandon any remaining Personal Property located at the Leased Premises, and (c) fix a bar date for filing of claims of the Counterparties to the Rejected Leases.

34. On May 22, 2024, the Bankruptcy Court issued an Order Granting Debtors' First Omnibus Emergency Motion for Order Authorizing (A) Rejection of Unexpired Leases of Non-Residential Real Property Effective as of the Petition Date, (B) Abandonment of any Remaining Personal Property Located at the Leased Premises, and (C) Fixing a Bar Date for Claims of Counterparties (the "Rejection Order") (*see* Rejection Order, annexed as Exhibit "10" hereto).

35. Attached as Exhibit 1 to the Rejection Order was a list of Rejected Leases, and the Lease at issue herein was identified as Number 64 on that list.

---

[3] The Rejection Date is defined as "the later of (i) the Petition Date, and (ii) the date the Debtors relinquish control of the applicable leased premises by notifying the affected landlord in writing of the Debtors' irrevocable surrender of the premises and (a) have turned over the keys, key codes, or security codes, if any, to the landlord or (b) have notified the landlord in writing that the keys, key codes, or security codes, if any, are not available and that the landlord may re-key the leased premises."

36. Thus, the Lease for the Property has been rejected and Red Lobster is no longer in possession of the Property.

37. Additionally, as Red Lobster is in Bankruptcy, Plaintiff is not asserting any claims against Red Lobster herein.

38. To eliminate any doubt, the Guarantor is not among the Debtors that filed a Chapter 11 Bankruptcy case in the Bankruptcy Court. Annexed as Exhibit "11" hereto is a Notice of Chapter 11 Bankruptcy Case, which lists all Debtors affiliated with Red Lobster that filed for Chapter 11 Bankruptcy. Since the Guarantor is not among those entities, Plaintiff is free to commence this action against it.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST GUARANTOR: FOR PAST DUE BASE MONTHLY RENT AND ADDITIONAL RENTAL

39. All prior allegations are re-alleged and incorporated herein as if fully set forth at length.

40. As set forth herein, Red Lobster breached the Lease.

41. As further set forth herein, Plaintiff provided Red Lobster with a Notice of Default in accordance with the Lease.

42. Red Lobster failed to cure the defaults.

43. The Lease expressly states that upon an Event of Default, the Lessor can recover from Lessee all rent and other monetary sums then due and owing under this Lease.

44. Red Lobster breached the Lease by failing to pay the Base Monthly Rent for the months of November 2023, December 2023, January 2024, February 2024, March 2024, April 2024 and May 2024.

45. The amount of past due Base Monthly Rent due and owing on the Lease from November 2023 through May 2024 is $132,378.73.

46. Per the Lease, Plaintiff is entitled to impose a late charge of 5% on each of the seven (7) missing Base Monthly Rent payments, which totals $6.618.94 ($18,644.89 x 5% = $932.24 x 2 months = $1,864.49) + ($19,017.79 x 5% = $950.89 x 5 months = $4,754.45).

47. Per the Lease, Plaintiff is also entitled to charge Default Rate interest on the delinquent Base Monthly Rent payments, which rate is 14%. As of May 31, 2024, the total default rate interest amounts to $6,155.92.

48. A statement of account and summary of the past due Base Monthly Rent, with late charges, Default Rate interest, and real estate taxes due by Red Lobster to the Plaintiff is annexed as Exhibit "12" hereto.

49. As of May 31, 2024, there was Base Monthly Rent, late charges and Default Rate interest due and owing from Red Lobster to Plaintiff under the Lease in the sum of $145,153.59 (*see id.*).

50. As set forth herein, Red Lobster also breached the Lease by failing to pay the real estate taxes due and owing on the Property for April 30, 2024, which included the quarterly installment of Onondaga County real estate taxes in the amount of $3,654.57 and the quarterly installment of City/School real estate taxes in the amount of $6,958.60.

51. As of June 18, 2024, there is $11,722.29 in real estate taxes due and owing for the Property because late penalties of $274.09 and $835.03 were assessed by Onondaga County and the City of Syracuse, respectively, for failing to timely pay the Onondaga County and City/School taxes, which constitutes Additional Rental under the Lease.

52. In total, there is $156,875.88 in past due Base Monthly Rent, late charges, Default Rate Interest and Additional Rental due and owing under the Lease.

53. Pursuant to the Guaranty, Guarantor unconditionally and irrevocably guaranteed (i) the payment and performance of all Red Lobster's obligations under the Lease and (ii) the payment of all sums due under the Lease (*see* Exhibit "2" hereto).

54. Additionally, in Paragraph 3 of the Guaranty, the Guarantor specifically agreed that "[t]he obligations, covenants, agreements and duties of Guarantor under this Guaranty shall in no way be affected or impaired by reason of the happening from time to time of any of the following:

> …(g) the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the assets, marshalling of assets and liabilities, receivership, conservatorship, custodianship, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, or other similar proceeding affecting, Lessee or Guarantor or any of their respective assets;
>
> …(k) the release or discharge of Lessee from the performance or observance of any obligation, undertaking or condition to be performed by Lessee under the Lease by operation of law, including any rejection or disaffirmance of the Lease in any bankruptcy or similar proceedings.

(*see id.*).

55. Pursuant to the Guaranty Plaintiff provided Guarantor with a Notice of Default and demanded the immediate payment of all past due Base Monthly Rent and Additional Rent due and owing by Red Lobster under the Lease (*see* Notice to Guarantor, annexed as Exhibit "13" hereto).

56. Guarantor breached its obligations under the Guaranty by failing to pay all past due Base Monthly Rent and Additional Rent due and owing by Red Lobster to Plaintiff under the Lease.

57. Thus, Plaintiff is entitled to judgment against Guarantor in the amount of $156,875.88 for all past due Base Monthly Rent and Additional Rent due and owing by Red Lobster to Plaintiff under the Lease.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST GUARANTOR: FOR LIQUIDATED DAMAGES/RENT SCHEDULED TO BECOME DUE

58. All prior allegations are re-alleged and incorporated herein as if fully set forth at length.

59. As set forth herein, Red Lobster breached the Lease.

60. As further set forth herein, Plaintiff provided Red Lobster with a Notice of Default in accordance with the Lease.

61. Red Lobster failed to cure the defaults.

62. The Lease explicitly provides that upon an Event of Default that the Lessor can accelerate and recover from Lessee the present value (discounted at a rate of United States Treasuries with a maturity closest to the remaining Lease Term) of all rent and other monetary sums scheduled to become due and owing under the Lease after the date of such breach for the entire original scheduled Lease Term (*see* Lease at Section 24[B](v), which is annexed as Exhibit "1" hereto).

63. The Base Annual Rental for 2024 is $228,213.50, which results in the Base Monthly Rent for 2024 to be $19,017.79 ($228,213.50 ÷ 12).

64. As demonstrated in the table below, a total of $133,124.53 in Base Monthly Rent will become due for the period of June 1, 2024 through December 31, 2024, which is the remainder of the 2024 calendar year:

| BASE MONTHLY RENT FOR THE REMAINDER OF 2024 | AMOUNT DUE |
|---|---|
| June 2024 | $19,017.79 |
| July 2024 | $19,017.79 |
| August 2024 | $19,017.79 |
| September 2024 | $19,017.79 |
| October 2024 | $19,017.79 |
| November 2024 | $19,017.79 |
| December 2024 | $19,017.79 |
| **2024 TOTAL:** | **$133,124.53** |

65. As set forth herein, the Lease expressly provides that the Base Annual Rental shall increase by 2% on January 1st each year.

66. Below is a table of the Base Annual Rental that will come due under the Lease for the period from January 1, 2025, through December 31, 2034:

| LEASE YEAR | 2% INCREASE OF BASE ANNUAL RENTAL FROM PRIOR YEAR | TOTAL ANNUAL RENT DUE |
|---|---|---|
| 2025 | ($228,213.50 x 0.02) $4,564.27 | $232,777.77 |
| 2026 | ($232,777.77 x 0.02) $4,655.56 | $237,433.33 |
| 2027 | ($237,433.33 x 0.02) $4,748.67 | $242,181.99 |
| 2028 | ($242,182.00 x 0.02) $4,843.64 | $247,025.63 |
| 2029 | ($247,025.64 x 0.02) $4,940.51 | $251,966.14 |
| 2030 | ($251,966.15 x 0.02) $5,039.32 | $257,005.47 |
| 2031 | ($257,005.47 x 0.02) $5,140.11 | $262,145.58 |
| 2032 | ($262,145.58 x 0.02) $5,242.91 | $267,388.49 |
| 2033 | ($267,388.49 x 0.02) $5,347.77 | $272,736.26 |
| 2034 | ($272,736.26 x 0.02) $5,454.73 | $278,190.98 |
| **TOTAL:** | | **$2,681,976.17** |

67. Per the Lease, Plaintiff is able to recover the present value of all rent to become due and owing under the Lease, and to calculate that amount, the present value of the rent must be discounted at a rate of United States Treasuries with a maturity closest to the remaining Lease Term.

68. According to the Market Data from the Wall Street Journal, as of June 18, 2024, the U.S. Treasury Notes and Bonds with a maturity closest to the remaining Lease Term (12/31/2034) is the Treasury Notes and Bonds with a maturity date of 5/15/2034, which have a

yield rate of 4.212% (*see* Wall Street Journal Market Data for June 18, 2024, annexed as Exhibit "14" hereto).

69. To calculate the present value for each year's rent, the Plaintiff utilized the Present Value formula function in Microsoft Excel using the above figures, and as demonstrated in the table below, the present value of all rent to become due and owing under the Lease from June 1, 2024 to December 31, 2034 is $2,082,389.00:

| LEASE YEAR | BASE ANNUAL RENTAL | AMOUNT DISCOUNTED PER U.S. TREASURY RATE | TOTAL ADJUSTED PRESENT VALUE OF RENT DUE |
|---|---|---|---|
| 2024 | $133,124.53[4] | -$19,867.65 | $113,256.88 |
| 2025 | $232,777.77 | -$52,943.74 | $179,834.03 |
| 2026 | $237,433.33 | -$54,002.64 | $183,430.69 |
| 2027 | $242,181.99 | -$55,082.71 | $187,099.28 |
| 2028 | $247,025.63 | -$56,184.33 | $190,841.30 |
| 2029 | $251,966.14 | -$57,308.02 | $194,658.13 |
| 2030 | $257,005.47 | -$58,454.21 | $198,551.26 |
| 2031 | $262,145.58 | -$59,623.32 | $202,522.26 |
| 2032 | $267,388.49 | -$60,815.78 | $206,572.71 |
| 2033 | $272,736.26 | -$62,032.07 | $210,704.19 |
| 2034 | $278,190.98 | -$63,272.71 | $214,918.27 |
| **TOTALS:** | **$2,681,976.17** | **-$599,587.17** | **$2,082,389.00** |

70. Pursuant to the Guaranty, Guarantor unconditionally and irrevocably guaranteed (i) the payment and performance of all Red Lobster's obligations under the Lease and (ii) the payment of all sums due under the Lease (*see* Exhibit "2" hereto).

71. Plaintiff provided the Guarantor with a Notice of Default and therein accelerated all rent scheduled to become due under the Lease (*see* Exhibit "13" hereto).

72. Accordingly, Plaintiff is entitled to recover a judgment against the Guarantor in the amount of $2,082,389.00, representing the present value of Base Monthly Rent and Base

---

[4] For 2024, the Plaintiff used the Base Monthly Rent due for the period of June 1, 2024 through December 31, 2024, as demonstrated above, and not the Base Annual Rental.

Annual Rental that will become due until the end of the Lease Term, discounted at a rate of 4.212%.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST GUARANTOR: FOR ATTORNEY'S FEES, COSTS AND EXPENSES

73. All prior allegations are re-alleged and incorporated herein as if fully set forth at length.

74. Upon an Event of Default, the Lease provides that Lessor can recover from Lessee "all reasonable costs and expenses, including reasonable attorneys' fees, court costs, expert witness fees, costs of tests and analyses, travel and accommodation expenses, deposition and trial transcripts, copies and other similar costs and fees, paid or incurred by Lessor as a result of such breach, regardless of whether or not legal proceedings are actually commenced" (*see* Lease at Section 24[B](vi), which is annexed as Exhibit "1" hereto).

75. Additionally, the Guaranty expressly provides that "Guarantor also agrees to pay to Lessor such further reasonable and actual amounts as shall be sufficient to cover the cost and expense actually incurred in collecting such sums, or any part thereof, or of otherwise enforcing this Guaranty, including, without limitation, in any case, reasonable attorneys' fees and disbursements" (*see* Guaranty at Section 2, which is annexed as Exhibit "2" hereto).

76. Accordingly, Plaintiff is entitled to judgment against Guarantor for Plaintiff's reasonable attorney's fees, costs and expenses, in an amount to be determined by the Court.

WHEREFORE, Plaintiff hereby respectfully requests that the Court:

(a) Enter judgment against Guarantor on its First Cause of Action in the total amount of $156,875.88 for all amounts of Base Monthly Rent and Additional Rent due under the Lease;

(b) Enter judgment against Guarantor on its Second Cause of Action in the total amount of $2,082,389.00, representing the present value of Base Monthly Rent and Base Annual

Rent that will become due until the end of the Lease Term, discounted at the May 15, 2034 U.S. Treasury rate of 4.212%;

(c) Enter judgment against Guarantor on its Third Cause of Action for Plaintiff's reasonable attorney's fees, costs and expenses, in an amount to be determined by the Court; and

(d) such other and further relief as may be deemed just, equitable, necessary and proper.

Dated: June 18, 2024
Albany, New York

**s/ Peter M. Damin**
Peter M. Damin, Attorney Bar No.: 517186
*Attorneys for Plaintiff*
MESA VALLEY HOUSING ASSOCIATES II LIMITED PARTNERSHIP
Lemery Greisler LLC
677 Broadway, 8th Floor
Albany, New York 12207
Telephone: (518) 433-8800
Fax: (518) 433-8823
E-mail: pdamin@lemerygreisler.com

## VERIFICATION

MARK BREEN, hereby declares that he is a General Partner of MESA VALLEY HOUSING ASSOCIATES II LIMITED PARTNERSHIP, the Plaintiff in this action, and he is authorized to provide this verification, that he has read the foregoing and attached Verified Complaint, and that the same is true of his own personal knowledge and/or based upon those documents attached as exhibits to the Verified Complaint, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, he believes them to be true.

I verify under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of June, 2024, in Scottsdale, Arizona.

*Mark Breen*

MARK BREEN
Mesa Valley Housing Associates II
Limited Partnership
15957 N. 81st Street #101
Scottsdale, Arizona 85260